## COMMISSIONER OF INTERNAL REVE-
## NUE v. BOLENDER.
### No. 5630.

Circuit Court of Appeals, Seventh Circuit.

March 25, 1936.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Harry Marselli, Sp. Assts. to Atty. Gen., and Joseph M. Jones, of Washington, D. C., for petitioner.

Frank C. Olive and Forman D. McCurdy, both of Indianapolis, Ind., for respondent.

Before ALSCHULER and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Only one question is raised by this petition for review of a decision of the United States Board of Tax Appeals to the effect that in determining taxable gain arising from the sale of shares of stock of the Vogt Manufacturing Corporation, acquired through a nontaxable reorganization, the "first in, first out" rule does not apply, but that rather the average cost of the shares is the proper basis for computation of the resulting gain.

In 1929, respondent, the taxpayer, owning 116 shares of the common stock of the Carter Company, which she had previously acquired in lots purchased at different times for different prices, exchanged all such holdings for shares in Vogt Manufacturing Corporation, on the basis of 25 shares of the latter for each share in the Carter Company surrendered. No part of the new shares can be identified as having been issued for any particular lot of the old shares. Rather, they were received as a unit, in exchange for the entire interest in the old company, as a result of a reorganization, nontaxable within the meaning of section 112 (b) (3) of the Revenue Act of 1928, 26 U.S.C.A. § 112 (b) (3).

During the same year, the taxpayer sold part of the stock received in the reorganization and reported the transaction in her tax return. She contended that the proper basis for computing the gain realized on the sale of shares of Vogt Manufacturing Corporation, so acquired, was to allocate the aggregate cost of all of the Carter Company stock surrendered by the petitioner equally to the total of the shares of the Vogt Company stock issued to her in exchange therefor. The Commissioner, in calculating an alleged deficiency, in determining the gain, deducted the cost of the earliest acquired stock of the Carter Company. The Board of Tax Appeals held that respondent had rightfully treated the total cost of the old shares as an allocation to the new shares as a unit, and that she was liable for no deficiency. Thereupon the Commissioner filed this petition to review.

Article 58, Treasury Regulations 74, promulgated under the Revenue Act of 1928, is, in part, as follows:

"When shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of the lots cannot be determined, the

stock sold shall be charged against the earliest purchases of such stock."

It was upon this regulation that the Commissioner relied. But this article does not in terms apply to a nontaxable exchange such as occurs in a true reorganization, but only to stock purchased at different times and at different prices. Stock received in a nontaxable reorganization cannot be said to be within this regulation, because it does not constitute stock acquired both at different times and different prices. Rather, it represents stock acquired at one time and at one place, as a result of an exchange by the terms of which a stockholder in a previously existing corporation, holding an aliquot part thereof, represented by shares, surrenders all of the same as a unit and receives therefor a corresponding part of a new corporation. Such transaction is governed by section 113 of the Revenue Act of 1928, 26 U.S.C.A. § 113 note.

This conclusion is in accord with Commissioner v. Von Gunten (C.C.A.) 76 F. (2d) 670, 671, where, in discussing the "first in, first out" rule, the court said:

"We regard the rule as inapplicable here. Respondent Von Gunten did not sell shares of stock 'from lots purchased at different dates and at different prices.' He sold 800 shares out of 3,750 shares of Borden stock which he acquired at one time, about 'June 6, 1929,' by a single transaction of exchange; and for a single consideration, i. e., the 450 shares of Averill Company stock."

In accord with this conclusion also are Helvering v. Stifel (C.C.A.) 75 F.(2d) 583, which, while differing somewhat in the the law as is presented here and Commissioner v. Oliver (C.C.A.) 78 F.(2d) 561, where the court approved the conclusion of the Board, which used this language:
facts, involves the same interpretation of

"The first in, first out rule was adopted as a rule of convenience, in the absence of clear evidence as to the identity of the lots sold and their cost. When all lots purchased and acquired by stock dividend distributions are exchanged for shares of a different par value, the cost of all the shares exchanged becomes the basis of the total shares received. The shares received are one lot acquired at the same time, whether the number of shares acquired is represented by one or more certificates. Hence, there is no necessity for such a rule.

"The rule does not in terms apply to a sale of stock acquired by a nontaxable exchange or by gift, but only to stock 'purchased' at different times and at different prices.

"We are of the opinion that the rule does not apply to property received on any nontaxable exchange. The rule first appeared as paragraph 60 of Regulation 33 Revised issued under the Revenue Acts of 1916 and 1917. It has been continued in all subsequent regulations in substantially the same form. It has legislative sanction, therefore, but this sanction does not go beyond the literal terms thereof."

The petitioner relies upon Perkins v. United States (Ct.Cl.) 12 F.Supp. 481, 487, but there the court was not considering facts such as confront us here, but was dealing with a case coming strictly within article 58. There the taxpayer had received shares of stock in one corporation at various times and at various prices. He sold part of the same and the court properly applied the "first in, first out" rule. No reorganization was involved. The court said:

"However, we are of opinion that at most article 58 intended to go no further than to authorize the average method of determining cost as set forth in article 600 only in cases involving reorganization."

The Board of Tax Appeals was justified in its conclusion, and its decision is hereby affirmed.