**Monroe ZIPP and Helen Zipp, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Bernard ZIPP and Jean B. Zipp, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Nos. 13374, 13375.**

United States Court of Appeals
Sixth Circuit.

May 21, 1958.

Bennet Kleinman, Cleveland, Ohio, (Fred Siegel, Rocker, Zaller & Kleinman, Cleveland, Ohio, on the brief), for petitioners.

George F. Lynch, Washington, D. C. (Charles K. Rice, Lee A. Jackson, Robert N. Anderson, Washington, D. C., on the brief), for respondent.

Before SIMONS, Chief Judge, MARTIN, Circuit Judge, and JONES, District Judge.

PER CURIAM.

The petitions of two brothers, Monroe Zipp and Bernard Zipp, and their respective wives for review of decisions of the Tax Court of the United States, holding deficiencies of $20,926.88 in the income taxes of each for the year 1950, were consolidated for hearing. The somewhat complicated transactions between the two brothers and their father, Louis Zipp, the founder and practically sole owner of the Paramount Steel and Supply Company, led to this tax litigation.

The Paramount Steel and Supply Company had a total of fifty outstanding shares of capital stock: all of which, except a few qualifying shares, were owned by Louis Zipp. On May 24, 1947, he caused to be transferred to his two sons, Bernard and Monroe, 23 shares each of the capital stock of the company. The certificates were endorsed by the sons in blank and delivered to the custody of their father's attorney, who was also attorney for Paramount.

As found by the Tax Court, Louis Zipp, the father in contemplation of a re-marriage consummated in 1947, discussed with his attorney the possible effects of such step upon his financial interest in Paramount and the possibility of future marital difficulties, which might jeopardize his interest in the company as well as interfere with the operation of its business. The Tax Court found on substantial evidence that, on advice of the attorney, all shares, except two, of the Paramount stock owned by Louis Zipp were put in the names of his two sons "so

that they could not be reached by Louis' wife, if marital difficulties arose, or in the event of Louis' death, or in the event Louis became involved in any financial deals."

On May 29, 1950, the father—after he had been in a controversy with his sons—entered into an agreement in writing whereby he acknowledged that he had no interest, right, title or claim whatever in the two certificates for 23 shares each, issued to his respective sons, Bernard and Monroe Zipp. In accordance with the terms of the agreement, Louis Zipp received from the Paramount company the total consideration of $93,782.50, comprising $75,000 in cash, cancellation of an indebtedness to the company of $16,682.-50, and an automobile valued at $2,100. The agreement recited that the earned surplus of Paramount as of May 29, 1950, amounted to $93,790.90.

The total consideration received by the father from Paramount was in exchange for all his forty-eight shares of stock in the company, whereof only two shares stood in his name. The certificates for these two shares were endorsed by him in blank and surrendered to the company. The result of the transaction was that, after May 29, 1950, the two Zipp brothers owned all the fifty shares of outstanding stock in Paramount Steel and Supply Company. Funds of the company were used to purchase this stock in an equal number of shares for each brother. The brothers did not report any income from the transaction of May 29, 1950.

The Commissioner of Internal Revenue determined that the deficiency in income tax liability of each of the petitioners, Monroe and Bernard Zipp, amounted to $46,891.25, or one-half of $93,782.50, inasmuch as that amount had been withdrawn from the Paramount company by Louis H. Zipp in payment for forty-six shares of the company's capital stock which were acquired by the sons

from their father as a result of the transaction. The Commissioner concluded from this that fifty percent of $46,891.25 was taxable as dividends to each of the brothers. The Tax Court upheld this determination by the Commissioner upon the ground that the father, Louis Zipp, had not made completed bona fide gifts of twenty-three shares of stock to each of his sons in May of 1947; that his sons had been made mere nominees whose names were used to suit his convenience; and that Louis Zipp had remained owner of the shares and was such at the time he entered into the agreement with Paramount on May 29, 1950.

The Tax Court concluded that Paramount had paid Louis Zipp $93,782.-50 for all forty-eight shares of his stock and that Louis Zipp had sold these shares, it being abundantly clear that the transactions of May 29, 1950, were to enable the sons to purchase all the father's interest in the Paramount Steel and Supply Company; and that, it being a family corporation, it was possible for them to proceed as they had. It was reasoned further that the sons had not made loans from Paramount, but had caused its cash to be distributed for their benefit, namely, to enable them to purchase all their father's stock. It was reasoned further that, inasmuch as Paramount had accumulated earned surplus in the amount of $93,790.90, it must be concluded that the payment of $93,782.50 by Paramount constituted taxable dividends constructively received in equal parts by the two sons. See I.R.C.1939, § 115(b), 26 U.S. C.A. § 115(b); cf. Paramount-Richards Theatres v. Commissioner, 5 Cir., 153 F.2d 602, 604; Byers v. Commissioner, 8 Cir., 199 F.2d 273, 275.

Accordingly for the foregoing reasons, more fully disclosed by the findings of fact and the opinion of the Tax Court, the decision of that court in each of these two cases is affirmed.