## HOLMES v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8141.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 21, 1942.

Decided March 1, 1943.

Harold Harper, of New York City (Ben A. Matthews, James E. Austin, and Nida Root Nestel, all of New York City, on the brief), for petitioner.

Irving I. Axelrad, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Arthur A. Armstrong, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before BIGGS, MARIS, and JONES, Circuit Judges.

BIGGS, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals, the Board having determined that the taxpayer is liable for a deficiency in income taxes for the year 1937. The wife of the taxpayer has likewise filed a petition for review of a decision of the Board affirming a ruling of the Commissioner assessing a deficiency in income tax against her. The case last referred to stands upon our docket at No. 8142. It has been stipulated that the decision in the instant case shall control the decision in No. 8142.

The facts are not in dispute. From 1929 through 1937 the taxpayer bought and sold stocks and securities of American Type Founders Company. On January 1, 1937, the taxpayer owned 750 shares of common stock of that company which he had acquired in 1929; 342 shares of common stock received by him in December, 1936, in exchange for bonds; $9,000 principal amount of debentures acquired by him in February, 1936; and $5,700 principal amount of debentures received by him in December, 1936, in exchange for bonds. These securities were held by the taxpayer's brokers for the taxpayer. As a result of the reorganization of American Type Founders Company, the taxpayer through his brokers exchanged these securities. In April, 1937, the 750 shares of common stock were exchanged by the taxpayer for 375 shares of new common stock of American Type Founders Company, resulting in a cost to the taxpayer of $339.50 a share; on June 11, 1937 the $1,600 principal amount of debentures (out of the block in the principal amount of $5,700) were exchanged for 160 shares of the new common stock, resulting in a cost to the taxpayer of $3.84 a share. The ownership of the taxpayer in the new stock was evidenced by one certificate for 100 shares and other certificates for 60 shares. $3,000 principal amount of debentures (out of the $9,000 principal amount of debentures) were exchanged for 300 shares of new common stock represented by three certificates for 100 shares each. There is no controversy in respect to these 300 shares. Neither are we concerned with any other exchanges of securities which the taxpayer made.

On March 6, 1937, at the taxpayer's direction, the taxpayer's brokers made a short sale of 400 shares of the new common stock of American Type Founders Company for the price of $7,036.24. On June 11, 1937, the brokers completed the short sale; that is to say, they ended the taxpayer's short position by delivering 400 shares of stock against the short sale to the purchaser. This stock was represented by four certificates for 100 shares each received in the exchanges which we have enumerated.

The certificate representing the 100 shares in controversy (out of the four certificates for 100 shares each) happened to be the certificate for 100 shares received by reason of the conversion on June 11, 1937, of the $1,600 principal amount of debentures (out of the block of debentures in the principal amount of $5,700) which represented stock costing the taxpayer $3.84 a share.[1] It is agreed that all stock certificates or securities in the taxpayer's brokerage account were held by the brokers at all times in street names or were issued to bearer. It is stipulated that the taxpayer gave no instructions to his brokers as to which shares should be used by them to complete the short sale.

The taxpayer contends that all of the shares of the new common stock of American Type Founders Company, the certificates being in street names, were fungible; that since they were fungible, the "First-in, first-out" rule must be applied, and that since the 375 shares (received by the brokers for the taxpayer by the conversion of the 750 shares of old common stock at a cost to the taxpayer of $339.50 a share)

[1] The taxpayer's brief states:

"The [short] sale was completed on June 11, 1937, by delivering to the purchaser certificates representing 300 shares of the new stock (as to which there is no controversy) and a certificate representing 100 shares, which happened to be one of the certificates by which petitioner had acquired new stock at the low cost of $3.84 a share."

were first in the taxpayer's brokerage account in point of time, the cost of those shares and not the cost of the shares received later (from the conversion of the $1,600 principal amount of debentures at a cost of $3.84 a share) must furnish the basis for determining the gain or loss to the taxpayer.[2] If the taxpayer's view prevails, the amount of the deficiency is $48.-85. If the Board of Tax Appeals is correct in its decision, the amount of the deficiency is $3,475.

The First-in, first-out rule is so old and well known that any extended explanation of it in this opinion would be superfluous. It is incorporated in Article 22(a)-8 of Treasury Regulations 94, promulgated under the Revenue Act of 1936.[3] It is sufficient to say that it establishes a presumption to be followed if the true facts are not known. The First-in, first-out rule cannot be applied in the case at bar, however, since the 100 shares of stock have been identified and there is therefore no room for a presumption. Prior cases construing the First-in, first-out rule involve factual situations in which the taxpayer attempted to identify the stock to be sold, but which stock actually sold was not that which the taxpayer intended to be sold. The courts have held that in such situations the income tax computation is to be made upon the basis of the shares actually sold. Davidson v. Commissioner, 305 U.S. 44, 59 S.Ct. 43, 83 L.Ed 31. See Smith v. Higgins, 2 Cir., 102 F.2d 456; Commissioner of Internal Revenue v. Merchants' & Mfrs.' Fire Ins. Co., 3 Cir., 72 F.2d 408.

In the case at bar the taxpayer gave no instructions to his brokers. The taxpayer's contention that the certificates which were delivered had not been specifically allocated to the taxpayer's account since they were in street names cannot be sustained. The shares were not only capable of identification, but in fact they have been identified and the taxpayer admits the identification.

The taxpayer lays great emphasis on the decision of the Supreme Court in Helver-ing v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343. In the cited case the Supreme Court held that the court of appeals for this circuit had disregarded the facts found by the Board of Tax Appeals upon sufficient evidence and had substituted findings of fact of its own. In the case at bar the finding by the Board of Tax Appeals that the 100 shares which were actually delivered cost the taxpayer $3.84 a share is not only supported by adequate evidence but is conceded by the taxpayer.

The decision of the Board of Tax Appeals is affirmed.

---

[2] The applicable statute is the Revenue Act of 1936, c. 690, 49 Stat. 1648:

"§ 113. Adjusted basis for determining gain or loss—

"(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that * * *." 26 U.S.C.A. Int.Rev.Code, § 113(a).

[3] Article 22(a)-8 is as follows:

"Sale of stock and rights.—If shares of stock in a corporation are sold from lots purchased at different dates or at different prices and the identity of the lots can not be determined, the stock sold shall be charged against the earliest purchases of such stock."